FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Jul 26, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HOLLY M. D., <br><br>                 Plaintiff, <br><br>    v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>               Defendant. | NO:  1:22-CV-3091-RMP <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR CALCULATION OF BENEFITS |

BEFORE THE COURT, without oral argument, are briefs from Plaintiff

Holly M. D.[1], ECF Nos. 10 and 13, and Defendant the Commissioner of Social

Security (the "Commissioner"), ECF No. 12.  Plaintiff seeks judicial review,

pursuant to 42 U.S.C. §§ 405(g) of the Commissioner's partial denial of her claims

for Social Security Income ("SSI") under Title XVI, and Disability Insurance

Benefits under Title II, of the Social Security Act (the "Act").  *See* ECF No. 10 at 2.

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first
name and middle and last initials.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 1

Having considered the parties' briefs, the administrative record, and the applicable law, the Court is fully informed.  For the reasons set forth below, the Court grants Plaintiff's Motion for Summary Judgment and remands for calculation of benefits.

## BACKGROUND

### *General Context*

Plaintiff applied for SSI and DIB in October and November 2014, alleging an onset date of October 26, 2014. Administrative Record ("AR")[2] 218, 225.  Plaintiff was 32 years old on the alleged disability onset date and asserted that she was unable to work due to a herniated disc in the lower back, rheumatoid arthritis, and a deteriorating lower spine.  AR 247, 250.  Plaintiff's claims proceeded to a hearing before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision on July 5, 2017.  AR 12–27.  The ALJ's decision became the final agency decision, and Plaintiff sought review by this Court.  *See* AR 1, 759–69.

While Plaintiff's district court case was pending, she filed new SSI and DIB applications on approximately August 20, 2018.  *See* AR 679.  In initial determinations dated December 26, 2018, and January 25, 2019, Plaintiff was found disabled as of August 1, 2017.  AR 775.

---

[2] The Administrative Record is filed at ECF No. 10.

The U.S. District Court remanded the July 5, 2017 ALJ decision for additional proceedings on August 7, 2019. AR 759–69. On October 14, 2020, Plaintiff appeared for a hearing on remand held telephonically by ALJ Timothy Mangrum from Yakima, Washington. AR 700–02. Plaintiff was represented by Robert Tree. AR 700–702. The ALJ heard from vocational expert ("VE") William Weiss as well as from Plaintiff. AR 700–12. The ALJ did not find any basis for reopening Plaintiff's August 20, 2018 applications and addressed only whether Plaintiff was disabled during the period between October 26, 2014, and July 31, 2017. AR 679.

***ALJ's Decision***

Applying the five-step evaluation process, ALJ Mangrum found:

**Step one:** Plaintiff meets the insured status requirements of the SSA through December 31, 2019. AR 682. Plaintiff did not engage in substantial gainful activity from October 24, 2014, through July 31, 2017. AR 682.

**Step two:** Plaintiff has the following severe impairments: rheumatoid arthritis, degenerative disc disease, urology disorder, and obesity. AR 682 (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)).

**Step three:** The ALJ concluded that, during the relevant period, Plaintiff did not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). AR 683. In reaching

this conclusion, the ALJ considered listings 1.04 (disorders of the spine), 14.09 (inflammatory arthritis), and listings 6.00 et seq. (genitourinary disorders resulting in chronic kidney disease).  AR 683–84.  The ALJ further considered the effects of obesity on Plaintiff's other severe impairments.  AR 684 (citing SSR 19-2p).

**Residual Functional Capacity ("RFC"):** The ALJ found that, during the relevant period, Plaintiff could perform a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that Plaintiff could not climb ladders, ropes, or scaffolds.  Plaintiff could occasionally climb stairs, stoop, crouch, kneel, and crawl.  Plaintiff could frequently handle and finger.  Plaintiff should avoid concentrated exposure to excessive vibration and hazards.  AR 684.  In formulating Plaintiff's RFC, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  AR 685.

**Step four:** The ALJ found that, during the relevant period, Plaintiff was able to perform past relevant work as a cafeteria worker without needing to perform any work-related activities precluded by her RFC.  AR 689 (citing 20 C.F.R. §§ 404.1565 and 416.965).

**Step five:** The ALJ further found other jobs that exist in the national economy that Plaintiff can perform, considering her age, education, work experience, and RFC. AR 690. The ALJ found that Plaintiff has a high school education and that she was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. AR 690 (citing 20 C.F.R. §§ 404.1564 and 416.964). The ALJ found that transferability of job skills is not material to the determination of disability because use of the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. AR 690 (citing SSR 82-41; 20 C.F.R. Part 404, Subpart P, Appendix 2).

The ALJ further found that during the relevant period, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including the following representative occupations: call-out operator (sedentary, unskilled work, with around 258,000 jobs nationally); surveillance system monitor (sedentary, unskilled work with around 96,000 jobs nationally); and charge account clerk (sedentary, unskilled work, with around 250,000 jobs nationally). AR 690–91. The ALJ concluded that Plaintiff was not under a disability, as defined by the SSA, from October 26, 2014, through July 31, 2017. AR 691 (citing 20 C.F.R. §§ 404.1520(f) and 416.920 (f)).

1    Through counsel, D. James Tree, Plaintiff sought review of the ALJ's decision

2  in this Court.  ECF No. 1.

3                                **LEGAL STANDARD**

4    ***Standard of Review***

5    Congress has provided a limited scope of judicial review of the

6  Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the

7  Commissioner's denial of benefits only if the ALJ's determination was based on

8  legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d

9  993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's]

10  determination that a claimant is not disabled will be upheld if the findings of fact are

11  supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

12  1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere

13  scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

14  1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.

15  1989).  Substantial evidence "means such evidence as a reasonable mind might

16  accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389,

17  401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the

18  [Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark*

19  *v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the

20

21

record, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

A decision supported by substantial evidence still will be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

### *Definition of Disability*

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do their previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Thus, the

definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### Sequential Evaluation Process

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R §§ 416.920, 404.1520. Step one determines if they are engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

1    If the impairment is not one conclusively presumed to be disabling, the

2  evaluation proceeds to the fourth step, which determines whether the impairment

3  prevents the claimant from performing work that they have performed in the past.  If

4  the claimant can perform their previous work, the claimant is not disabled.  20

5  C.F.R. §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv).  At this step, the claimant's RFC

6  assessment is considered.

7    If the claimant cannot perform this work, the fifth and final step in the process

8  determines whether the claimant is able to perform other work in the national

9  economy considering their residual functional capacity and age, education, and past

10  work experience.  20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v); *Bowen v.*

11  *Yuckert*, 482 U.S. 137, 142 (1987).

12    The initial burden of proof rests upon the claimant to establish a prima facie

13  case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th

14  Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden

15  is met once the claimant establishes that a physical or mental impairment prevents

16  them from engaging in their previous occupation.  *Meanel*, 172 F.3d at 1113.  The

17  burden then shifts, at step five, to the Commissioner to show that (1) the claimant

18  can perform other substantial gainful activity, and (2) a "significant number of jobs

19  exist in the national economy" that the claimant can perform.  *Kail v. Heckler*, 722

20  F.2d 1496, 1498 (9th Cir. 1984).

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 9

### ISSUES ON APPEAL

The parties' motions raise the following issues regarding the ALJ's decision:

1.     Did the ALJ erroneously discount Plaintiff's subjective complaints?

2.     Did the ALJ reversibly err at step five by failing to identify jobs that exist in the national economy?

3.     Did the ALJ erroneously assess the medical source opinions?

***Subjective Complaints***

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony.  ECF No. 10 at 7.  With respect to rheumatoid arthritis, Plaintiff argues that the ALJ did not consider all of the relevant evidence in the record in finding that Plaintiff experienced "significant improvement" and that the record on the whole shows that Plaintiff's condition did not improve to the extent that it ceased to be debilitating.  *Id.* at 8–9 (citing AR 52–54, 257, 294, 453, 578–79, 687; *Holohan v. Massanari*, 246 F.3d 1195, 1207–08 (9th Cir. 2001) (for the proposition that an ALJ cannot selectively rely on some entries in a claimant's record while ignoring others).

Plaintiff also submits that the ALJ relied on daily activities that Plaintiff did not perform at the same intensity of competitive work to discount her testimony.  ECF No. 10 at 9.  Plaintiff asserts that the record indicates that she babysat a friend's children for only a few hours at a time, two or three times per month.  *Id.* (citing AR

47, 56, 260).  Plaintiff asserts that the record indicates that other daily activities include shopping in stores only five to thirty minutes at a time.  *Id.*

Third, Plaintiff argues that the ALJ gave insufficient reasons for discounting Plaintiff's allegations of back pain.  Plaintiff disputes that "conservative treatment" was a legitimate reason because Plaintiff's treatment notes indicate that surgical intervention was not indicated during the relevant time.  ECF No. 10 at 10 (citing AR 358, 687).  Plaintiff further asserts that the ALJ could not solely rely on the only other reason that he identified, normal exam findings, to discount Plaintiff's pain testimony.  *See id.* (citing *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996); *Bunnell v. Sullivan*, 947 F.3d 341, 345 (9th Cir. 1991)).

Fourth, Plaintiff argues that the ALJ erroneously discounted Plaintiff's testimony of urinary symptoms on the basis that the "urgency symptoms primarily occurred at night" or that the "frequency/urgency [of Plaintiff's urinary symptoms] remained stable" because the ALJ cites no evidence to support these assertions.  ECF No. 10 at 10–11 (citing AR 687).  Plaintiff argues that the district court already found in the initial 2019 appeal that the Plaintiff continued to have urinary symptoms, despite some relief.  *Id.* (citing AR 764).

The Commissioner responds that an ALJ is permitted to find a claimant's allegations unreliable based on inconsistency with the objective and other evidence of record.  ECF No. 12 at 3 (citing Social Security Ruling ("SSR") 16-3p, 2016 SSR

LEXIS 4, 2017 WL 5180304, at *7–8, *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)).  The Commissioner maintains that, with respect to rheumatoid arthritis, the ALJ relied on "'powerful evidence'" in the form of lack of treatment to find that Plaintiff's symptoms were not as debilitating as claimed.  *Id.* at 3–4 (citing AR 444–45).  The Commissioner asserts that the ALJ was not required to discuss every piece of evidence.  *Id.* at 4 (citing *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)).

With respect to back pain, the Commissioner asserts that the ALJ relied on substantial evidence in the form of Plaintiff's not pursuing more aggressive treatment despite notes from her treating neurologist Marjorie Wang, MD, who "observed that further treatment with injection therapy, medial branch blocks, and radiofrequency neurotomies could be applied if Plaintiff exhausted conservative measures[.]"  ECF No. 12 at 4 (citing AR 358, 687).  The Commissioner further argues that Plaintiff's daily activities, including the ability to independently manage tasks of personal care, prepare meals, wash dishes, shop in stores, text on a phone, and assist with childcare of two children, combine with the objective medical evidence to discount Plaintiff's symptoms.  *Id.* at 5 (citing AR 257–62, 524, 526, 685–87).

The Commissioner continues that Plaintiff's argument is unpersuasive regarding the ALJ's treatment of Plaintiff's testimony about her urinary symptoms.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR CALCULATION OF BENEFITS ~ 12

ECF No. 12 at 6.  The Commissioner argues that the ALJ found that Plaintiff's urgency symptoms primarily occurred at night, and Plaintiff's frequency and urgency remained stable.  *Id.* at 6 (citing AR 636–43, 687).  The Commissioner asserts that the ALJ was free to evaluate the record and find that Plaintiff did not "need . . . additional breaks or time or task [sic], or a limitation for workplace proximity to a restroom" because the district court merely required the agency to reevaluate Plaintiff's testimony and did not mandate any particular finding regarding Plaintiff's urinary symptoms.  *Id.* (citing AR 764–65).

Plaintiff replies that the Commissioner is incorrect in her position that Plaintiff's lack of treatment permits an inference that her rheumatoid arthritis symptoms were not as disabling as reported.  ECF No. 13 at 2.  Plaintiff asserts that, as an initial matter, the "ALJ did not reject Plaintiff's testimony of disabling rheumatoid arthritis symptoms because she failed to seek treatment, so this is an improper *post hoc* reason that cannot be considered by this Court."  *Id.* (citing *Bray v. Comm'r*, 554 F.3d 1219, 1226–27 (9th Cir. 2009)).  Moreover, Plaintiff cites the ALJ's recognition that Plaintiff went without the medications for her rheumatoid arthritis for three years up until the beginning of the relevant period because she was without insurance and could not afford to follow the prescribed treatment.  *Id.* at 13.

In deciding whether to accept a claimant's subjective pain or symptom testimony, an ALJ must perform a two-step analysis.  *Smolen v. Chater*, 80 F.3d

1273, 1281 (9th Cir. 1996).  First, the ALJ must evaluate "whether the claimant has

presented objective medical evidence of an underlying impairment 'which could

reasonably be expected to produce the pain or other symptoms alleged.'"

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.*

*Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the first test is met and there

is no evidence of malingering, "the ALJ can reject the claimant's testimony about

the severity of [his] symptoms only by offering specific, clear and convincing

reasons for doing so."  *Smolen*, 80 F.3d at 1281.

There is no allegation of malingering in this case.  Plaintiff alleges that she

became unable to work on October 26, 2014, and that her primary impairments from

that date until July 31, 2017, were back pain and rheumatoid arthritis.  AR 685.  As

summarized by the ALJ:

> At her first hearing, held on June 6, 2017, the claimant reported
> symptoms of urinary urgency. She testified that she felt the urge to
> urinate once or twice per hour, depending on liquid intake. She testified
> that her rheumatoid arthritis causes stiffness and tightness of muscles,
> as well as swollen joints. She stated that she had trouble walking and
> lifting. However, she also testified to normal activities of daily living,
> such as preparing meals, reading for pleasure, watching television,
> going to parks with friends, and swimming in the summer. She testified
> that she volunteered at her church's nursery school once or twice per
> month. At the hearing held on October 14, 2020, the claimant testified
> that her primary issue during the relevant period of October 26, 2014 to
> July 31, 2017 was back pain and rheumatoid arthritis. She reported that
> she had to lie down during the day. She stated that she experienced four
> bad days a week. She testified that she had tenderness and deformity at
> the fingers, problems gripping and holding, wrist issues, and often
> dropped things.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 14

AR 685.

After reviewing Plaintiff's medical record and evaluating the medical source opinions, the ALJ found that, "[c]onsidering the overall evidence of record, the undersigned finds that light work with additional postural, environmental, and manipulative limitations . . . adequately accommodate the combined effect of the claimant's physical impairments." AR 687.  The ALJ found that the limitations he found "are supported by laboratory studies confirming markers of rheumatoid arthritis" and by "medical imaging showing mild to moderate multilevel degenerative changes at the spine[.]" AR 687 (citing AR 393, 452).  Nevertheless, the ALJ concludes that "evidence of improvements in the claimant's conditions with conservative treatment does not support greater physical limitation." AR 687.

The ALJ cites to two treatment records to support his conclusion that Plaintiff's improvement undermines her complaints regarding rheumatoid arthritis symptoms.  In the first record, from November 4, 2014, Plaintiff was establishing care with a neurologist, Dr. Nina Flavin, who wrote, "She was treated with METHOTREXATE and SIMPONI for a year with good control of her rheumatoid arthritis until her insurance ran out and she was unable to afford the medications. She has been without treatment for rheumatoid arthritis for 3 years and her disease is progressing and getting worse." AR 334.  Dr. Flavin assessed Plaintiff as having "moderately active" rheumatoid arthritis with "chronic joint deformities" resulting

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR CALCULATION OF BENEFITS ~ 15

from the three years in which the disease had gone untreated.  AR 335.  The ALJ

contrasted the November 4, 2014, treatment record with a record two years later, on

April 5, 2016, in which Dr. Flavin noted that Plaintiff's rheumatoid arthritis

appeared to be "well controlled on her current therapy consisting of HUMIRA,

METHOTREXATE and PLAQUENIL."  AR 453.  Dr. Flavin further noted that

Plaintiff "is still struggling with a lot of chronic back pain" for which Dr. Flavin

"suggested a trial of GABAPENTIN and encouraged her to continue conservative

measures."  AR 453.  In Dr. Flavin's contemporaneous examination of Plaintiff, she

noted that Plaintiff "still has chronic deformities in bilateral wrists with limited

range of motion."  AR 453.  While evidence of effective management of a condition

with medication can support a finding that a person is not disabled, the ALJ did not

articulate how the April 2016 record conflicts with Plaintiff's assertion that she

suffers from tenderness and deformity at the fingers, problems gripping and holding,

wrist issues, and often dropped things.  *See* AR 685; *Warre v. Comm'r of Soc. Sec.

Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled

effectively with medication are not disabling.").  Indeed, the April 2016 record

supports that Plaintiff's bilateral wrists still featured deformities and limited range of

motion.  AR 453.  The Court finds no facial inconsistency between either the

November 2014 or April 2016 records and Plaintiff's specific allegation that she

cannot hold things well and often drops things.  Therefore, the Court does not find a

1  generic finding of improvement, without substantial evidence supporting the degree

2  of Plaintiff's improvement, to be specific, clear, or convincing for discounting

3  Plaintiff's allegation.  The error is not harmless because the ALJ assessed Plaintiff as

4  being able to "frequently handle and finger" in the RFC.  AR 684.

5      The ALJ also relies on Plaintiff's daily activities to find the record

6  inconsistent with the degree of impairment that Plaintiff alleged.  Specifically, the

7  ALJ reasons that the following activities undermine Plaintiff's subjective symptom

8  complaints: preparing meals; washing dishes; shopping in stores; texting on a phone;

9  reading for pleasure; watching television; going to parks with friends; swimming in

10  the summer; volunteering at her church's nursery school once or twice per month;

11  shopping; and assisting with the care of two children, including changing diapers.

12  AR 685, 687.

13      An ALJ may consider daily activities in evaluating a claimant's testimony

14  regarding their physical limitations and the severity of their symptoms.  *Fair v.*

15  *Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) ("[I]f a claimant is able to spend a

16  substantial part of his day engaged in pursuits involving the performance of physical

17  functions that are transferable to a work setting, a specific finding as to this fact may

18  be sufficient to discredit an allegation of disabling pain." (emphasis in original)).

19      Plaintiff reported in her Adult Function Report dated November 10, 2014, that

20  as part of her daily activities, she was able to stretch, cook breakfast, eat, shower,

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 17

1   dress, watch her nephews, make lunch, dinner, and watch television.  AR 257–58.

2   Plaintiff wrote that she was no longer able to hike, lift heavy objects, sit

3   comfortably, run, or float on a river, as she could before her impairments.  AR 258.

4   As for personal care, Plaintiff wrote that dressing, bathing, hair care, shaving, and

5   using the toilet all involved a struggle to bend and reach.  AR 258.  In October 2016,

6   she reported to a healthcare provider that she had injured her knee and leg running to

7   catch up with her young nephew as he ran toward an intersection.  AR 524.  The

8   ALJ cites these two records to support his findings regarding Plaintiff's daily

9   activities.

10          This evidence does not reasonably demonstrate that Plaintiff's allegations of

11   debilitation are at odds with the daily activities she endorses or that Plaintiff's

12   activities required a level of fine or gross motor skills that are reasonably

13   inconsistent with Plaintiff's testimony or reasonably transferrable to a work setting.

14   AR 40, 261; *see also Fair*, 885 F.2d at 603 ("The Social Security Act does not

15   require that claimants be utterly incapacitated to be eligible for benefits . . . .").

16   Even if the record indicated that Plaintiff were able to engage in some physical

17   activity, the ALJ did not articulate how and why such evidence is inconsistent with

18   Plaintiff's testimony.  Therefore, the ALJ erred by finding Plaintiff's testimony

19   regarding her back pain and rheumatoid arthritis symptoms inconsistent with

20   evidence of Plaintiff's activities.  The ALJ's remaining reason for discounting

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 18

Plaintiff's complaints is inconsistency with the objective medical evidence; however, this reason alone does not suffice. *See Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir. 2006) ("While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence."). Accordingly, the ALJ's reasoning did not amount to a specific, clear, or convincing basis, supported by substantial evidence, to discount Plaintiff's subjective complaints. Moreover, while the parties discuss the ALJ's treatment of other impairments alleged by Plaintiff, the Court finds the ALJ's treatment of Plaintiff's rheumatoid arthritis and back pain sufficient to require reversal, as these are the impairments that Plaintiff claims prevented her from working during the relevant period.

The Court finds that the ALJ reversibly erred by not providing specific, clear, and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective complaints.

### Step Five

Plaintiff argues that, at step five, the ALJ erroneously relied on VE testimony regarding job numbers that a reasonable mind would not accept. ECF No. 10 at 19. Plaintiff argues that the ALJ bore the burden of identifying jobs in substantial numbers in the economy that Plaintiff could perform despite RFC limitations. *Id.* at 17 (citing 20 C.F.R. §§ 404.1520, 404.1560, 416.920, 416.960; *Johnson v. Shalala*,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 19

60 F.3d 1428, 1432 (9th Cir. 1995)).  Plaintiff asserts that the job numbers to which

VE Weiss opined were at odds with "'the commonly accepted software used by

rehabilitation and vocational experts.'"  ECF No. 10 at 18 (quoting *Wood v.*

*Berryhill*, 2017 WL 6419313, at *3 (W.D. Wash. Nov. 17, 2017), *report and*

*recommendation adopted*, 2017 WL 6372590 (W.D. Wash. Dec. 13, 2017)

(unpublished)).  Plaintiff submits that, by Job Browser Pro estimates from 2020,

"there were nationally only 976 full-time Charge Account Clerks (DOT 205.367-

014) ([AR] 850), 2,974 full-time Call-Out Operators (DOT 237.367-014) ([AR]

851), and 2,979 full-time Surveillance-System Monitor Jobs (DOT 379.367-010)

([AR] 852)."  *Id.* at 19.  Plaintiff adds that these numbers collectively result in "only

6,929 full-time jobs in the national economy[.]"  *Id.*  Plaintiff summarizes: "If a

reasonable mind would not accept VE testimony, remand may be issued.  Remand is

appropriate here because the vocational expert testimony is inconsistent with

information from Job Browser Pro."  *Id.*

The Commissioner responds that Plaintiff is attempting to substitute her own

lay interpretations of vocational resources for the testimony of the VE, who

identified a combined total of over 600,000 jobs.  ECF No. 12 at 11.  In addition, the

Commissioner argues, Plaintiff does not show that she is using either the same

source or methodology as VE Weiss, so she does not meet the criteria for showing

that her evidence undercuts the testimony of the VE.  *Id.* at 11–12 (citing *White v.*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 20

1  *Kijakazi*, 44 F.4th 828, 836 (9th Cir. 2022) (citing *Buck v. Berryhill*, 869 F.3d 1040,

2  1052 (9th Cir. 2017)).  Lastly, the Commissioner argues that since the ALJ also

3  found Plaintiff capable of performing past relevant work as a cafeteria worker at step

4  four of the sequential process, "*assuming arguendo* any error at step five, such

5  would be harmless." *Id.* at 12 (emphasis in original).

6      At step five, "the Commissioner has the burden 'to identify specific jobs

7  existing in substantial numbers in the national economy that [a] claimant can

8  perform despite [his] identified limitations.'" *Zavalin v. Colvin*, 778 F.3d 842, 845

9  (9th Cir. 2015) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)

10  (alterations in original)). "To aid in making this determination, the ALJ may rely on

11  an impartial vocational expert to provide testimony about jobs the applicant can

12  perform despite his or her limitations." *Gutierrez v. Colvin*, 844 F.3d 804, 806–07

13  (9th Cir. 2016).

14      VE Weiss testified in response to the ALJ's hypothetical posing the RFC that

15  Plaintiff could perform past work in "kitchen jobs" in addition to work as a call-out

16  operator (258,000 jobs in the national economy), surveillance system monitor

17  (96,000 jobs in the national economy), and charge account clerk (250,000 jobs in the

18  national economy).  AR 715–16.  Plaintiff's counsel asked VE Weiss where he

19  obtained his job numbers.  AR 720.  VE Weiss stated that he relied on the "Bureau

20  of Labor Statistics," and VE Weiss and Plaintiff's counsel engaged in a lengthy

21

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR CALCULATION OF BENEFITS ~ 21

exchange about how current and specific to the identified occupations VE Weiss's information was.  AR 719–26.  Although the Court finds the VE's explanation of how he derived his data to be opaque, the Commissioner is correct that Plaintiff does not challenge the ALJ's determination at step four that Plaintiff is capable of performing her past work as a cafeteria worker.  *See* ECF No. 12 at 12.  The Commissioner also is correct that Plaintiff's source for job numbers is different from the VE's, and Plaintiff offers no authority to support that the VE must use Job Browser Pro and merely argues that Job Browser Pro is an accepted source.  *See White*, 44 F.4th at 834 ("VEs may use a wide range of data sources and methodologies to generate job-number estimates).  Therefore, the Court does not find the ALJ's step five analysis to independently require remand.

### *Medical Source Opinions*

Plaintiff argues that the ALJ erroneously evaluated medical opinion evidence in her initial brief, but Plaintiff is silent on the issue in her reply.  ECF Nos. 10 at 12–17; 13 at 1–8.  As Plaintiff appears to have abandoned her arguments on this issue, and the Court has found reversible error on another ground, the Court need not address the ALJ's treatment of medical source opinions.

### *Remedy*

Whether to reverse and remand for further proceedings or to calculate and award benefits is a decision within the discretion of the district court.  *See Harman*

*v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  Remand for further proceedings is appropriate when developing the record would be useful.  *See Smolen*, 80 F.3d at 1292.  However, when further development of the record is unneeded, remand to calculate and award benefits may be warranted.  *See id.*  The Ninth Circuit has endorsed remand for calculation of benefits where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

In the present case, the Commissioner, for the second time in Plaintiff's matter, has committed reversible error by relying on legally insufficient reasons for rejecting Plaintiff's subjective symptom claims, and the Commissioner does not direct the Court to any outstanding issues that must be resolved before a determination of disability can be made.  *See* ECF No. 12 at 13. The Court finds that Plaintiff's allegations would have precluded ongoing, full-time work if fully credited.  The Court identifies no utility in remanding Plaintiff's claim for a third round of adjudication by the SSA.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ did not provide legally sufficient reasons for discounting Plaintiff's subjective complaints.  In addition, the Court finds that further administrative proceedings have not been shown to be necessary.  Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED**.

2. Defendant the Commissioner's Brief, **ECF No. 12**, is **DENIED**.

3. The decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for calculation and payment of benefits.

4. Judgment shall be entered for Plaintiff.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close the file** in this case.

**DATED** July 26, 2023.


        _s/ Rosanna Malouf Peterson_
        ROSANNA MALOUF PETERSON
        Senior United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR CALCULATION OF BENEFITS ~ 24